2:23-cv-03452-JAK-MRW

TODD MICHAEL SCHULTZ
818 N DOHENY DR. #1108
WEST HOLLYWOOD, CA 90069
310-435-5847
TODDSCHULTZ86@GMAIL.COM
In Pro Per

**FOURTH AMENDED COMPLAINT**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

PLAINTIFF

TODD MICHAEL SCHULTZ

    vs.

DEFENDANTS

  MICHAEL C. THOMPSON
  GREGORY R. HOLMES
  YOUTUBE LLC

Case No: 2:23-cv-03452-JAK-MRWx

COMPLAINT FOR DAMAGES AND

RELIEF

Jury Trial Demanded:  YES

---

## I.  Jurisdiction

**1.** This court has jurisdiction under U.S. Code 28 §1331 which states the district courts

shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

1

**FOURTH AMENDED COMPLAINT**

treaties of the United States. Additionally, there exists a diversity of citizenship and the relief requested exceeds $75,000.

## II. <u>Venue</u>

**2.** Venue is proper as plaintiff resides in reasonable proximity to Central District of California, Los Angeles and while Plaintiff acknowledges, per Youtube LLC's (Onward "Youtube") Terms of Service (onward "ToS"), legal complaints shall be filed in the Northern District of California, Plaintiff urges the court to consider the likelihood that Youtube acted in "bad faith" towards Plaintiff. Potentially criminally. Further, Plaintiff alleges substantial harm sustained as a result of Youtube's negligence, failure to warn, and untenable functionality. When deciding on the very important matter of venue, Plaintiff asks the court to consider the scope of potential liabilities and recognize that a minor change in venue not impede an otherwise reasonable and diligent complaint. Additionally, plaintiff asks that the court not sever the defendants in this complaint nor delay justice in this matter, as it may result in additional harm sustained to plaintiff's emotional and physical wellbeing, as well as reputation.

**3.** Additionally, because Youtube is being sued in their role as a service provider, they are unlikely to be able to invoke §230 immunities and thus, plaintiff stands a reasonable chance of having this matter fully adjudicated, further emphasizing the

**FOURTH AMENDED COMPLAINT**

importance of promptly delivering justice to all parties. Plaintiff urges the court to consider whether the change in venue from California's Northern District to the Central District of Los Angeles constitutes much of a burden for Youtube, a company that has offices in both locations.

**4.** Though Plaintiff acknowledges that the Americans with Disabilities Act ("ADA") does not apply to the Federal Judiciary, Plaintiff suffers from an ADA recognized disability - Attention Deficit Hyperactive Disorder ("ADHD") - making any further delay or severance of parties in this matter an undue burden under rule 1.100 of the California Rules of Court which states "It is the policy of the courts of this state to ensure that persons with disabilities have equal and full access to the judicial system." Dismissing this matter due to a minor conflict of venues would place an extreme burden on Plaintiff's pursuit of justice. It does not follow that the same can be said for Youtube, thus Plaintiff humbly requests that the venue be decided to remain where it currently resides, in the Central District of California in Los Angeles.

### III. Parties

**5.** Plaintiff is Todd Michael Schultz and resides at 818 N Doheny Dr. #1108 for the past 13 years.

**6.** Defendant one is Michael C. Thompson who currently resides in Covington County in Kentucky, but has lived in Ohio.

---

3

**7.** Defendant two is Gregory R. Holmes who resides in Covington County, Kentucky.

**8.** Defendant three is YouTube L.L.C. (onward "Youtube") and has headquarters in San Bruno, CA in the Northern District of California. Neal Mohan is listed as their current CEO as of February 2023. Susan Wojcicki had been CEO throughout the majority of the matter, notably from 2014 – 2023.

## IV. Statement of Facts

**9.** Defendant Michael C. Thompson (onward "Thompson") conceived, created and published the Hollywood Laughingstock Youtube Channel (onward "HL Channel" or "HL") in order to "defend himself" against Plaintiff's public claims that Thompson is a bully and a danger to the public.

**10.** Defendant Gregory R. Holmes (onward "Holmes") has a longstanding relationship with Thompson, and is known by many accounts to supply Thompson with the means to execute Cyberstalking and participating in said Cyberstalking, as well as knowingly conspiring to cyberstalk and harass, or otherwise ruin Plaintiff's reputation.

**11.** Youtube claims that they "strictly enforce" their Cyberharassment policy on their official Twitter.

**12.** Thompson had been using Youtube's platform for the purposes of cyberstalking and harassing and targeting individuals for at least 1.5 years prior to

February 28, 2021, which Thompson cites as the day his activities towards Plaintiff began. Plaintiff does not deny calling Thompson a bully. Plaintiff urges the court to consider the trove of screenshots containing hundreds of cruel and insensitive messages towards Mr. Schultz, while simultaneously "reporting" on Plaintiff's life circumstances.

**13.** Thompson commented the words "imminent homelessness" on Plaintiff's YouTube channel, "Positive Momentum", currently named "Good Work!". Thompson posted doctored images of Plaintiff made to emphasize his aforementioned obsession with seeing Plaintiff homeless. Thompson published a video titled "Justin Lewis Ray – 1% (Mirror)" on Youtube under a channel titled "Parking Lot Creeper" on August 9, 2020 with the following description: "I am NOT the person in this video. These videos are being mirrored for educational purposes to show everyone that this hateful and vindictive man claiming to be the messiah, the reincarnated Lord Jesus Christ (something the Bible never says will happen), is nothing more than a pompous asshole who goes around cursing and threatening everyone. These videos will never go away Justin!" This is a pattern of conduct for Thompson. He repurposes Mr. Ray's livestream content and publishes it on his own Youtube channels in order to cause harm to Mr. Ray. Plaintiff contends that "Parking Lot Creeper" is in the same vain as HL Channel which is among the central issues in this matter.

**14.** Thompson was told he was in copyright violation by Plaintiff several times, as well as asked to take HL Channel down. Plaintiff expressed hurt and feeling harassed by

2:23-cv-03452-JAK-MRW

Thompson on several occasions. Prior to February 28, 2021, Plaintiff has had less than 10 interactions with Thompson, all of which have resulted in Plaintiff being denigrated or otherwise demeaned and often defamed. Plaintiff has never had a "good faith" conversation with Thompson and urges the court to consider whether criminal charges are warranted by Thompson's conduct. The acts for which Plaintiff files this complaint begin after February 28th, 2021.

**15.** Plaintiff admits that he urged Thompson to "do his worst" in an effort to highlight Thompson's bullying of aforementioned Ray. Thompson retaliated toward Ray's apt exercise of his copyright under the DMCA (Digital Millennium Copyright Act) and at least one iteration of aforementioned channel devoted to harassing and otherwise harming Ray. Thompson, retaliated with publishing another channel and swearing to publish them if Mr. Ray ever decided to "get smart." It is this type of behavior that prompted Plaintiff to decry Thompson as a bully, which Plaintiff contends will bare out in a dutiful review of the facts.

**16.** Plaintiff contends that Youtube committed fraud when they claimed from an official Twitter account that they "strictly enforce" their Cyberharassment policies. Under Youtubes own Terms of Service (onward "ToS") they claim Content that threatens individuals is not allowed on YouTube. Thompson and defendant Holmes conspired to operate channels dedicated to the targeted harassment of individuals, starting at least in August of 2020. The National Conference of State Legislatures considers any website or

**FOURTH AMENDED COMPLAINT**

blog devoted to inflicting harm, harassing, or otherwise tormenting an individual to be cyberstalking. At least 6 months prior to the start of Plaintiff's matter with the defendants, the defendants were engaging in activities deemed "not allowed" by Youtube and therefore are liable for harm sustained to Plaintiff regardless of §230 (or the Communications Decency Act - CDA), which often grants them immunity for illegal User Generated Content (UGC). Youtube operates a service that facilitates UGC and provides users powerful, world class tools in order to operate "Channels" which act as a website, blog and video log ("vlog") in addition to publishing ongoing video content. Thompson used these tools in order to successfully harass and otherwise cause harm to Plaintiff from February 2021 and is currently published under Youtube's explicit will.

17. Youtube is aware of HL Channel (currently titled Hell Toupee) and has made the decision to leave it published after being duly notified of the harm and duress it was placing Plaintiff under. HL Channel does not have any educational or news value. It operates solely to "make anyone who Google's [plaintiff] revile him." This direct quote amounts to a threat and is iterated across Thompson's many channels, each devoted to varying forms of abuse and harassment which he knows, for certain, cause serious harm.

18. One month before Plaintiff was temporarily removed from his residence, in part, at least, to HL Channel's horrifying influence on Plaintiff's life. Plaintiff's building manager, Mr. Peter Fay, cites HL Channel as belonging to Plaintiff in an email to the owner of Plaintiff's residence, Mr. Bret Easton Ellis, Plaintiff's boyfriend of 13 years.

Mr. Fay falsely states the following: "He has told the front desk to watch his YouTube channel during their off-duty time. A view of his YouTube posing's reveals alarming allegations that he shares with his

viewers. https://www.youtube.com/watch?v=nKJLsd1VbCA" The hyperlink mentioned in Mr. Fay's email, dated August 2, 2021, connects to a video published on HL Channel entitled "Todd Schultz says people in his generation should find someone to frivolously sue 7-10-21." Plaintiff admits to encouraging lawsuits in the spirit of justice. Plaintiff is aware of ongoing civil rights violations and abuses happening at all levels of society. Plaintiff contends to this day, that "good litigation" is important. In said video, Plaintiff specifically says "You have to actually have a real case and not just be abusing the legal system" in regards to law suits. Plaintiff is especially alarmed by Mr. Fay's use of the edited, and stolen, content, namely by the suggestion that said link belonged to Plaintiff.

**19.** Plaintiff lives in a building with a front desk that conducts security measures on behalf of the residents. Plaintiff informed front desk that he was being harassed and potentially stalked online by Defendants HL Channel. Plaintiff contends it very possible that Thompson directly emailed Mr. Peter Fay with links to his channel, then titled "Hollywood Laughingstock". Regardless, Thompson publishes a video that is libelous on its face. Plaintiff specifically states "you have to actually have a real case and not just be abusing the legal system," yet Thompson, in order to mislead and otherwise harm the

reputation of Plaintiff, publishes said stolen content, violating Plaintiff's copyright ownership and committing defamation or libel using Youtube's platform.

20. Thompson has admitted, or duly insinuated, that he emailed, called or otherwise contacted Plaintiff's General Practitioner in order to interfere with Plaintiff's medication. Plaintiff contends Thompson has no viable interest in Plaintiff's medical decisions and that such conduct constitutes a serious form of harassment, more akin to cyberstalking. Thompson admits to "watching everything Plaintiff does", while also publishing hundreds and hundreds of videos akin to the aforementioned "frivolously sue" video. Plaintiff does not encourage anyone to engage in frivolous legal matters, which should underly the seriousness of current matter.

21. From February 28, 2021 until the present at the time of writing, Monday June 26th 2023, Mr. Thompson has posted in the hundreds, much closer to or above 1000, videos using Plaintiff's copyrighted, per the terms of Youtube, property. He posts at most 450 videos at any given time, and highlights what he deems the most problematic moments, though most often, Thompson's salacious and misleading, libelous in many instances, headlines, along with personalized banner art created by English resident Zemoses, a longtime collaborator of Thompson and an acolyte of Thompson and Holmes.

22. Thompson and his acolytes, including defendant Holmes, the most substantial contributor to the financials for Thompson, namely in the form of donations to a webcast

**FOURTH AMENDED COMPLAINT**

in which Thompson engages in repetitive defamation and vulgarity, void of intellect, solely meant to rage against people he felt were defenseless.

**23.** Thompson typically cites one of the following reasons for justifying his activities: said target is a "homophobe". Plaintiff is gay. Said target is a "transphobe". Thompson routinely uses transphobic mocking of a non-transgendered target in order to deride and demean said target. Put plainly, Thompson is a psychopathic pathological liar with no floor of how disgusting his statements will go and no reason other than his own insecurities and unmanaged anger.

**24.** Thompson upkept a Twitter account associated with HL Channel – called @HWLaughingstock from July 2021 to early 2023, when he deleted said Twitter account. Plaintiff assumed said username on June 26th in order to obtain the screenshots of Thompson's activity on said page. Plaintiff is only learning now the scope of said Twitter page. It includes references to Plaintiff's residence/ location several times, as it changed over the course of months in a year.

**25.** Plaintiff lived in a motel in Hollywood – The Las Palmas Hotel – for one month following a dispute with the building, fueled and flamed by Thompson and Holmes. Thompson likely emailed the building with links to HL Channel designed to "alert" building of Plaintiff's behavior. Plaintiff contends that he committed no crimes. Petty drug use is decriminalized in Plaintiff's location. Plaintiff obeys the laws regularly

10

and is willing to testify to any action he took between February 28th 2021 and ongoing, at the request the court.

26. Thompson admits to spending many hours devoted to cutting and editing Plaintiff's livestream content and republishing under his own, illegal channel, HL Channel. Thompson has a pattern of conduct of making claims about his targets. Thompson has a history of obsessing over the homelessness of his targets. Thompson left a comment stating "Homelessness Imminent" sometime prior to the disruption is Plaintiff's living situation. Thompson regularly fixates on the potential for Plaintiff to experience homelessness. Thompson has expressed his desire to see Plaintiff homeless, with no teeth, but with a cell phone so plaintiff could still stream for his amusement.

27. Holmes participated heavily in Thompson's webcasts where Plaintiff was routinely defamed and slandered with overt maliciousness. Holmes routinely expresses support for Thompson's arguments based mostly on overt defamation and a deliberate construal of his desire to see Plaintiff "reviled by anyone that Googles him." This is more or less a direct quote from Thompson which is on video.

28. Holmes told Plaintiff in 2021 that he owed his life to Thompson. Plaintiff has heard stories about why this may be the case, however, whatever the story may be, in fact, it does not absolve Holmes from contributing financially to the sake of defaming and sabotaging Plaintiff routinely from February 2021 to the present. Holmes libelous statements are perhaps slightly less obvious than Thompson's, though they fall clearly

under the title of "Concern Trolling", a colloquial term meant to describe a situation where a person states fake concern or bemusement at another's circumstance publicly, so as to undermine or discredit them. The context, as one can see, of Holmes' attitude towards plaintiff, when he commented, "More more more! You are very talented. Absolutely wonderful" changed after February 28th, 2021 and were made at the expense of Plaintiff and Plaintiff's interests, such as: "Todd is suing journalist Drew Fortune (Rolling Stone) for refusing to review his music recordings." Plaintiff contends that Mr. Fortune published a libelous claim against Plaintiff, namely that Plaintiff had never released a single or and album. Plaintiff is a musician with more than 30 separate produced tracks available on every major streaming platform, as well as having release 2 albums, one of which, "Greatest Hits" by Todd Michael Schultz, being available at the time Fortune made such claim. Further, Plaintiff maintains it is right to defend his reputation when defamed materially. Plaintiff spent thousands of dollars and many hours on acquiring such a catalogue, and Fortune, being a music journalist, stating that Plaintiff had never released a single or album was overt DEFAMATION. For a musical artist, that is akin to being shut out of the club. If Fortune repeats said claim to any other musical journalist or person, he would be harming the future potential for revenue for Plaintiff, which would, in Plaintiff's humble, but well-earned matter of fact, harm Plaintiff's career as it were, immaterial of past popularity. If a music journalist tells everyone, or publishes in this instance, on Facebook, that he has no music, how is Plaintiff to experience the

fruits of his own labor without reserving the right to file a defamation suit where warranted. The comment also derided Plaintiff as a gold digger, and otherwise an unemployed loser who is subhuman somehow, which Plaintiff doesn't care to deny, and is up Mr. Fortune to decide if he believes such a claim.

29. Holmes, however, having associated by that time with Fortune, and Fortune with Thompson, and both parties with Soledad Haren, a 30 year stalker of Mr. Bret Easton Ellis, Plaintiff's boyfriend and owner of Plaintiff's residence, was being obtuse when he made the claim that Plaintiff was "suing" a journalist for refusing to review his music. Holmes made further obtuse and gaslighting, or concern trolling comments directed at Plaintiff's business endeavor, Bret Easton Ellis Books. Plaintiff purchased books online and was gifted copies of Ellis' catalogue. Plaintiff sold books as memorabilia a few times prior to 2021. In 2021, Plantiff created Bret Easton Ellis Books, which was a DBA title and an entity that was extremely promising in scope. Revenue was over 6 thousand in month one, deducting generously costs associated with said month. Plaintiff's DBA entity Bret Easton Ellis books bore thousands of skus and sold signed book sets, which have value to be determined by Plaintiff and the market. Holmes publishes twitter comments deriding Plaintiff's ability to run business with no other reason than to cause harm or otherwise interfere with Plaintiff's business. There is no reasonable way Holmes' concern lie with the customers. Mr. Schultz made every effort to make every transaction, of which there were hundreds, successful. Plaintiff refunded or

has since made good on every issue he has been made aware of. The business was a novel advent of Plaintiff and was written up in The Hollywood Reporter. Plaintiff can explain to the court the vast complexities of the supply chain revolving around said entity upon request (to put briefly, a sku is a product, a bookmark or a book, or a big bookmark, or a shirt, or a box. The vast number of combinations of aforementioned skus is easily in the thousands.)

30. Plaintiff requests the court to hold Thompson and Holmes, as well as Youtube civilly liable to damages done to Bret Easton Ellis Books as they both actively participated in a campaign to wrongly, knowingly and deliberately harm Plaintiff's ability to conduct said business. It is a matter of fact that the harassment Plaintiff experienced from Thomson, Holmes and their group, namely on Youtube's Livechat product, available to anyone with a username. Defendants, namely Thompson but very likely Holmes, used various aliases in order to continue an onslaught of harassment towards Plaintiff. Plaintiff was harassed relentlessly through Youtube's Livechat function, which is meant to serve as a way for a user to cultivate a community. Thompson and Holmes abused said function in order to continuously harass Plaintiff.

31. Plaintiff begged defendants to stop. Admitted he had childhood trauma and ADHD; an ADA recognized disability which seriously inhibits Plaintiff's ability to communicate. Thompson and Holmes rejected every claim made by Plaintiff in order to continue the assault of character. Their Livechat behavior continued past May 5th 2023,

the day Plaintiff filed this lawsuit. Plaintiff asks that the court find both parties referred for criminal witness tampering or something of the sort. Defendants hoped to send Plaintiff "off the edge" mentally, so that he would default on lawsuit. Plaintiff finds this behavior as incomprehensible as the rest, and moreso. Defendants are incapable of exhibiting good faith behavior and Plaintiff urges court to be mindful of every claim made by both Thompson and Holmes.

32. Plaintiff reported Thompson's channels several times. They are clear harassment. Any person that did any diligence, one might reason Youtube is capable of providing diligent moderation in such cases, would immediately recognize Thompson as a threat. Youtube, just like Thompson and Holmes, decided that Plaintiff was not of any consequence, and further, refused to take any action in the matter, until, in their own words, Plaintiff received a court order. Plaintiff alleges that Youtube uses AI or Bots, also known as artificial intelligence and algorithms, as well as Content Management Systems, in order to loosely delegate the moderator activities. This is in contrast to the human moderators from Reddit. Plaintiff alleges that negligence and fraud, and possibly criminal conspiracy, is a natural consequence of delegating Plaintiff's safety on Youtube's platform to a BOT or AI. Bot's or AI cannot hurt the way Plaintiff hurts. They can potentially identify what may be considered hurtful. But they cannot determine harassment.

**33.** Plaintiff asks that the court rules that AI cannot be delegated "good faith" moderating responsibilities without a substantial human presence. If Youtube would to like to claim a human oversaw these Channel Reports made by plaintiff, in addition to any other reports made against Thompson and his several Youtube Channels, Plaintiff asks that Defendant's be compelled immediately upon answer to set up depositions or compel discovery in regards to these matters.

**34.** Youtube had no intention of moderating their platform in good faith. Youtube had no intention of taking any measures to protect Plaintiff in this case, in which they are liable, even under section 230, for a failure to warn (there is no description of this pathological behavior on Youtube's sight, Plaintiff requests injunctive relief in the form of an awareness campaign in summary) as well as Promissory Estoppel. Plaintiff alleges it is far too likely Thompson has had one or more, at least, channels kicked off the platform, and thus should have been flagged as a threat on said platform. Youtube allowed Thompson to commit domestic terrorism in no uncertain terms. Crimes against Americans.

**35.** This is a non-exhaustive list of defamatory statements made by Thompson toward Plaintiff or at Plaintiff's expense:

a)  That I maliciously and willfully killed a songbird by throwing him off an 11th story balcony.

b)  That this lawsuit isn't real and that I "made it up."

c)  That I did not file this lawsuit after I already had.

d)  That I recklessly commit slander and defamation against individuals.

e)  That I committed fraud in conducting my business, Bret Easton Ellis Books, in 2021.

f)  That I encourage frivolous lawsuits.

g)  "Homelessness imminent."

h)  That I wear dentures and hair plugs.

i)  That I am lying about having an ADHD diagnoses.

j)  That I am lying about having Childhood trauma.

k)  That any attempt at good faith discussions were fraudulent on my part.

l)  That I am an obvious and well-known liar.

m) That I blame him for all of my problems.

n)  That I falsified a copyright for my cover of Marc Cohn's "Walking in Memphis."

o)  That I am incapable of suing him for his actions because I lack any credibility or the functional capacity to do so.

p)  That I am a conscious liar, and thus a deceitful person in every regard.

q)  That I made up the existence of a provisional patent I wrote and filed in 2021.

r)  That I control my boyfriend of 13 years' cell phone and email accounts in order to prevent his fans (he is the famed author of "American Psycho" the novel) from reaching him.

s)  That I am a domestic abuser.

t)  That I am delusional and not able to discern reality from fiction.

u)  That I do not understand the concept of "defamation" or anything related to the law.

v)  That I made attempts to hide evidence from the court.

**36.** This is an overwhelmingly non-exhaustive list of Mr. Thompson's defamation, slander and libel.

**37.** Mr. Thompson's goal, to see my life ruined, is supported by his own statements he frequently makes on his livestream shows. He made the specific claim that his goal was to make certain that anybody that Googled me would revile me in a now privated video, which Mr. Thompson will have to produce upon discovery. This would have been Mr. Thompson's legal prerogative if it had been for any reason other than to harm, hurt, defame, destroy, deflect from his own violations, and otherwise defraud the public about everything relating to Mr. Schultz. Criticism does not provide legal standing to initiate a smear campaign. Frankly, I am sorry so few people have been willing to speak out against Mr. Thompson and this complaint is essential for my reputation, mental and emotional health, physical health and, in my opinion, the public good. I ask that when considering the defendants activities, you consider the public good.

**38.** THERE CAN BE NO MISTAKE: Mr. Thompson demonstrates a clear pattern of behavior of using "websites or blogs" to torment individuals such as myself. In other words, fitting the very definition of Cyberharassment. All of Mr. Thompson's online accounts are devoted to the humiliation, defamation and otherwise degradation of

emotionally vulnerable individuals. An "emotionally vulnerable individual" generally suffers from a lack of enfranchisement in the opinion of Mr. Thompson, whether it be financial or mental, but he usually finds victims with both issues.

**39.** It is a crime to intentionally inflict emotional or physical distress onto another person. Thompson frequently violated Plaintiff's civil rights. Thompson acted hatefully and cruelly. I ask the court to use the harsher term when determining punitive damages, especially. Thompson understands how difficult it is for victims to explain what is happening to them, and exploits that difficulty to further and ultimately, destroy a person's livelihood. Thompson prays on multiple people at a time at any given moment. He has a "roster" of victims he rotates among.

**40.** Mr. Thompson is the primary antagonist in this matter. Mr. Holmes is recklessly negligent in not providing any intervention on behalf of Thompson's victims and also contributes to said slander, libel and otherwise defamatory practices routinely.

**41.** YouTube aided Mr. Thompson with reckless neglect of Plaintiff's distress, which I reported through their normal means, and even went so far as to make a video himself begging YouTube to stop the "gangstalking." It is not reasonable for a corporation as large as YouTube to lack the capacity to do basic diligence on a person such as Mr. Thompson, who flagrantly uses their platform for cruelty and torture. They allowed the behavior. Plaintiff cannot imagine that they were unaware of it. It is beyond a reasonable doubt, the fact, that YouTube aided Mr. Thompson through reckless

negligence in moderating their site and enforcing their Terms of Service. Virtually every social media network has anti-harassment provisions in their terms of service. YouTube was given far too many opportunities to do anything in this situation, and they chose to allow Mr. Thompson to violate civil rights of citizens of the United States. If Mr. Thompson is in fact found liable for the violations I allege in this complaint, then so must YouTube be considered liable for fraud. Their Terms of Service are their terms of service, Plaintiff contends.

**42.** Mr. Thompson laid serious harm to Mr. Schultz's business, Bret Easton Ellis Books, when he claimed and encouraged members of his internet group, "The Order of Eris" to further propagate that Mr. Schultz had defrauded individuals out of books. There is no corroborating evidence that Mr. Schultz ever once committed fraud on behalf of Bret Easton Ellis Books, and Mr. Schultz made every good faith effort to make sure every person that purchased a signed book set, which was the actual product, received their merchandise. The task was immense, and required the purchase of over $2,000 USD in stock, the creation and printing of custom Bret Easton Ellis Bookmarks, and a customized stamp to cultivate the artistic value of the products being sold, as well as to preserve the legacy of the name that resides on the books. Mr. Schultz did his best in good faith to make sure customers received their merchandise. Plaintiff refutes the claim that he ever committed fraud in this endeavor, and frankly the amount of shipped and delivered signed book sets, and the extensive efforts I took to secure that shipment, i.e.

contracting a supply warehouse, as well as the communication with angry customers, or otherwise dissatisfied customers is proof that I did not act fraudulently. Late ordered items are not grounds for a claim of fraud in and of themselves. The business had hundreds of individual products (aka "skus") and was a significant undertaking. The fraud accusations devastated Mr. Schultz, especially as the business had been written up in the Hollywood Reporter, with Mr. Schultz's name being featured, and the first day's sale of 3 thousand dollars, and a first month's sales totaled roughly $9 thousand dollars following the ShipMonk integration. The business was absolutely spectacular in novelty and vision and was committed to the cause of preserving books and the legacy of Mr. Schultz's long-term partner, Mr. Bret Easton Ellis. Mr. Schultz personally donated two $1,500-dollar copies of the UK Hardcover first edition of American Psycho in order to raise awareness for a "keep reading" campaign he was anticipating. He also used $900 of the proceeds to send around 10 women of all backgrounds to an event held by The Wrap Hollywood.

## V. SUMMARY OF RELIEF

**43. Injunctive Relief:** Youtube must be required to provide adequate human oversight over reports of Cyberharassment and bullying on their site. They must log all reports made by a user in their "Report Log" and they must give due warning on their site about the potential for pathological abuse. I suggest that they create a channel devoted to

21

persons who have been victimized by pathological malice and cyberstalking, as well as clear advice on how to spot it. Plaintiff believes software can absolutely play a helpful role, but it cannot be the sole recourse for any user, not the lowest or the largest, as this matter clearly demonstrates **BOTS LACK THE CAPACITY TO IDENTIFY BULLYING**. Let the latter statement be incorporate into the definition of "Good Faith" moderation from the Good Samaritan clause of §230. The department of justice in 2020 implored the judicial system to address this very issue. Let this be the point at which it begins or is done. I ask additionally that Thompson be required to stay off the internet unless he is monitored by a court appointed representative at regular intervals. I ask that Holmes also have his internet usage monitored by same or similar representative and that both of them be banned from utilizing the Youtube platform for anything reason other than to watch material. No participation in live chats and no publishing of videos or content of any kind.

**44. Punitive Damages**: For Mr. Thompson: $5 million dollars USD for the ongoing torture and targeted harassment of a human being, Plaintiff, illegally using a platform and for the vast amount of defamation, provocation and outright abuse of Plaintiff. I ask the court honor this request in good faith, and understand that no monetary value can compensate such emotional suffering, but it will absolutely create a deterrent to the outright abuses perpetuated by Thompson. For Holmes, I ask that the court demand $1.5

million dollars for the ongoing and reckless support, Cyberharassment and severe gaslighting. Holmes' gaslighting is particularly toxic and should be noted in the sentencing. His financial and emotional support for Thompson's activities should constitute a separate set of punitive damages to be no less than $1 million USD. For YouTube, no less than $20 million dollars USD may suffice for the ongoing reckless negligence of a user in spite of their professed commitment to taking such situations seriously. They are too large to fail, and thus must incur a substantive number in Punitive Damages. If Youtube employees, and the company in turn, are found liable for Cyberstalking and/ or Conspiracy to commit Cyberstalking, no less than $100 million USD in Punitive Damages. This is an unthinkable possibility that I am forced to address, and should go without saying this would constitute unprecedented shifts in the relationship citizens have with the internet at large. It does NOT STAND TO REASON THEY WERE UNAWARE THIS CONDUCT WAS TAKING PLACE ON THEIR SITE. I ask that all merited criminal referrals be made, as well.

**45. Compensatory Damages:** I ask that Thompson be required to apologize publicly for his unnecessary behavior or have compensatory damages tripled. Should he apologize, $2 million dollars USD. For Holmes: $1 million dollars, to be tripled if not coupled with an apology and an acknowledgement of harm done. For Youtube, I request $10 million dollars for their colossal failure to provide a safe service, while possessing an absurd

market share. Same rules in regards to apologies, that these damages be tripled unless coupled with an apology and acknowledgement of harm done.

**46. Material/ Economic Damages**: Bret Easton Ellis Books provided a one of a kind product and service, one that cannot be undervalued in determining relief, however, I can only hope to rebuild going forward and for the value of my stock lost during the period of harm, notably in the summer of 2021, I ask for $1 million dollars from Thompson and $2 million dollars from Holmes. I ask that they reserve $25 million dollars toward an initiative to provide aspiring writers with free workshops to be conducted by experienced writers somewhere on their platform, and that they make some diligence with promotional efforts in order that it be used by the public. Plaintiff was engaged in offering free writing workshops to the public; thus, this is proper redress for the harm sustained by Plaintiff while using their defective and inherently "bad faith" moderation system. If they were complicit, I ask that they reserve $100 million dollars for the same purpose, and double the payment made to writers leading said workshops. For damage to his person incurred while lawfully using their service, YouTube will provide Mr. Schultz lifetime health insurance coverage of the best quality and pay any psychiatric or psychology bills from 2021 to continue no less than 3 years from the date of judgment.

2:23-cv-03452-JAK-MRW

Dated this 26th of June, 2023

Todd Michael Schultz

_____

**FOURTH AMENDED COMPLAINT**