1

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

2  CONOR TUCKER, State Bar No. 318075
ctucker@wsgr.com

3  1900 Avenue of the Stars, Suite 2800
Los Angeles, California 91356

4  Telephone: (424) 446-6900
Facsimile: (866) 974-7329

5

6  Attorney for Defendant YouTube LLC

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12

13    TODD MICHAEL SCHULTZ

14            Plaintiff,

15        v.

16    MICHAEL C. THOMPSON et al.

17            Defendants.

18

19

20

21

22

23

24

25

26

27

28

|  |  |
|---|---|
| ) | Case No.: 2:23-cv-03452-JAK (MRWx) |
| ) | |
| ) | **DEFENDANT YOUTUBE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF CONOR TUCKER** |
| ) | |
| ) | Dept: Courtroom 10B |
| ) | Judge: Hon. John A. Kronstadt |
| ) | Date: September 11, 2023 |
| ) | Time: 8:30 am |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Monday, September 11, 2023 at 8:30am, or as soon thereafter as may be convenient for the Court, before the Honorable John A. Kronstadt in Courtroom 10B of the United States District Court, Central District of California, located at 350 W. First Street, Los Angeles, CA 90012, Defendant YouTube LLC will and hereby does move this Court, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order dismissing with prejudice all claims brought by Plaintiff against YouTube LLC.  This motion is made following the conference of counsel, pursuant to L.R. 7-3, which took place on July 14, 2023.

This Motion is based upon the concurrently-filed Memorandum of Points and Authorities, the Declaration of Conor Tucker (and any exhibits attached thereto), any Reply Memorandum or other papers submitted in connection with this motion, the Fourth Amended Complaint filed in this action (and documents therein incorporated), any matter of which this Court may properly take judicial notice, and any information presented at argument.

Respectfully submitted,

Dated: July 31, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   /s/ *Conor Tucker*
Conor Tucker

*Attorney for Defendant*
YOUTUBE LLC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................3

III.  LEGAL STANDARD ............................................................................6

IV.  ARGUMENT .......................................................................................7

    A.    Section 230 bars Plaintiff's claims ........................................7

          1.    Section 230 immunizes "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post." ..........................................7

          2.    Plaintiff's claims are barred by Section 230 because they all relate to YouTube's alleged "deci[sion] whether to exclude material that third parties seek to post." ........................9

          3.    Courts have already found that Section 230 bars Plaintiff's theories of products liability and fraud. ................................11

    B.    Plaintiff's allegations against YouTube separately fail to state a claim. ..............................................................................14

          1.    Plaintiff fails to state a claim for products liability. ................14

          2.    Plaintiff fails to state a claim for fraud. ....................................16

V.    CONCLUSION ...................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. TikTok, Inc.*,
  No. 22-1849, 2022 WL 14742788 (E.D. Pa. Oct. 25, 2022) ........................ 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 6, 15

*Asia Econ. Inst. v. Xcentric Ventures LLC*,
  No. CV 10-01360 SVW, 2011 WL 2469822
  (C.D. Cal. May 4, 2011) ........................................................................ 8

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ...................................................*passim*

*Barrett v. Rosenthal*,
  40 Cal. 4th 33 (2006) ............................................................................ 8

*Bennett v. Google, Inc.*,
  No. 1:16-cv-02283 (TFH), 2017 WL 2692607
  (D.D.C. June 21, 2017) .................................................................... 2, 13

*Bennett v. Google, LLC*,
  882 F.3d 1163 (D.C. Cir. 2018) .................................................. 3, 8, 10

*Brady v. Calsol, Inc.*,
  241 Cal. App. 4th 1212 (2015) .......................................................... 15

*Bride v. Snap Inc.*,
  No. 2:21CV-06680-FWS (MRW), 2023 WL 2016927
  (C.D. Cal. Jan. 10, 2023) ............................................................. 11, 13

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016),
  *aff'd*, 700 F. App'x 588 (9th Cir. 2017) ........................................... 13

*Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017),

    *aff'd sub nom*, 934 F.3d 53 (2d Cir. 2019).......................................................9

*Cronin v. J.B.E. Olson Corp.*,

    8 Cal.3d 121 (1972)..............................................................................................14

*Cross v. Facebook, Inc.*,

    14 Cal. App. 5th 190 (2017).......................................................................10, 17

*Crouch v. Ruby Corp.*,

    No. 22-cv-711-MMA (JLB), 2022 WL 16747282

    (S.D. Cal. Nov. 7, 2022)......................................................................................15

*Daniels-Hall v. Nat'l Educ. Ass'n*,

    629 F.3d 992 (9th Cir. 2010)................................................................................5

*Doe II v. MySpace Inc.*,

    175 Cal. App. 4th 561 (2009)............................................................................11

*Doe v. MySpace Inc.*,

    528 F.3d 413 (5th Cir. 2008)..........................................................................9, 10

*Dyroff v. Ultimate Software Grp., Inc.*,

    934 F.3d 1093 (9th Cir. 2019),

    *cert. denied* 140 S. Ct. 2761 (2020) ...............................................3, 7, 11, 12

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,

    946 F.3d 1040 (9th Cir. 2019)..............................................................................8

*Fair Hous. Council v. Roommates.com, LLC*,

    521 F.3d 1157 (9th Cir. 2008) (en banc).............................................1, 2, 11

*Force v. Facebook, Inc.*,

    934 F.3d 53 (2d Cir. 2019),

    *cert. denied*, 140 S. Ct. 2761 (2020))...........................................................12

*Gonzalez v. Google LLC*,

    2 F.4th 871 (9th Cir. 2021)...........................................................................3, 7

*In re Facebook, Inc.*,

    625 S.W.3d 80 (Tex. 2021),

    *cert. denied sub nom.*, 142 S. Ct. 1087 (2022) ...................................... 10, 11

*Jackson v. Airbnb, Inc.*,

    No. CV 22-3084 DSF, 2022 WL 16752071

    (C.D. Cal. Nov. 4, 2022) ................................................................. 15

*Jane Doe No. 1 v. Uber Techs., Inc.*,

    79 Cal. App. 5th 410 (2022) ........................................................... 15

*Khoja v. Orexigen Therapeutics, Inc.*,

    899 F.3d 988 (9th Cir. 2018),

    *cert. denied sub nom.*, 139 S. Ct. 2615 (2019) .................................. 5

*Kimzey v. Yelp! Inc.*,

    836 F.3d 1263 (9th Cir. 2016) ............................................ 2, 8, 9, 11

*L.W. v. Snap, Inc.*,

    No. 22CV619-LAB-MDD, 2023 WL 3830365

    (C.D. Cal. June 5, 2023) ................................................................. 12

*Lenz v. Universal Music Corp.*,

    572 F. Supp. 2d 1150 (N.D. Cal. 2008) .......................................... 3

*Levitt v. Yelp! Inc.*,

    765 F.3d 1123 (9th Cir. 2014) ........................................................ 7

*Merritt v. Countrywide Fin. Corp.*,

    No. 09-cv-01179-BLF, 2015 WL 5542992

    (N.D. Cal. Sept. 17, 2015) .............................................................. 14

*Metroka v. Pa. State L. Enf't*,

    No. CV 23-601, 2023 WL 3767745 (E.D. Pa. June 1, 2023) ........ 13

*Milwaukee Elec. Tool Corp. v. Super. Ct.*,

    15 Cal. App. 4th 547 (1993) .......................................................... 14

*Murphy v. Twitter, Inc.*,
     60 Cal. App. 5th 12 (2021).............................................................9, 12

*Perfect 10, Inc. v. CCBill LLC*,
     488 F.3d 1102 (9th Cir. 2007)...................................................................8

*Pierson v. Sharp Mem'l Hosp.*,
     216 Cal. App. 3d 340 (1989)...................................................................14

*Prager Univ. v. Google LLC*,
     951 F.3d 991 (9th Cir. 2020)...................................................................16

*Quinteros v. InnoGames*,
     No. C19-1402RSM, 2022 WL 898560
     (W.D. Wash. Mar. 28, 2022)...................................................................15

*Ripple Labs, Inc. v. YouTube LLC*,
     No. 20-cv-02747-LB, 2020 WL 6822891
     (N.D. Cal. Nov. 20, 2020).........................................................................7

*San Diego Hosp. Ass'n. v. Super. Ct.*,
     30 Cal. App. 4th 8 (1994).......................................................................15

*Schaffer Family Inv'rs LLC v. Sonnier*,
     120 F.Supp.3d 1028 (C.D. Cal. 2015)....................................................16

*Seismic Reservoir 2020, Inc. v. Paulsson*,
     785 F.3d 330 (9th Cir. 2015).....................................................................7

*Serv. by Medallion, Inc. v. Clorox Co.*,
     44 Cal.App.4th 1807 (1996)....................................................................16

*Sharufa v. Festival Fun Parks, LLC*,
     49 Cal. App. 5th 493 (2020)....................................................................14

*Sikhs for Just., Inc. v. Facebook, Inc.*,
     697 F. App'x 526 (9th Cir. 2017).............................................................13

*Stark v. Patreon, Inc.*,
    No. 22-cv-03131-JCS, 2022 WL 7652166
    (N.D. Cal. Oct. 13, 2022) .................................................................................5

*Terenkian v. Republic of Iraq*,
    694 F.3d 1122 (9th Cir. 2012).........................................................................7

*Twitter, Inc. v. Taamneh*,
    143 S. Ct. 1206 (2023) ................................................................................1, 3

*United States ex. rel. Lee v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) ..........................................................................5

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010).........................................................................5

*Wells v. Youtube, LLC*,
    No. 3:20-CV-2849-S-BH, 2021 WL 2652966 (N.D. Tex. May
    17, 2021), *report and recommendation adopted sub nom.*, 2021
    WL 2652514 (N.D. Tex. June 28, 2021)......................................................13

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991).......................................................................14

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997)..............................................................2, 8, 13

*Ziencik v. Snap, Inc.*,
    No. CV 21-7292-DMG, 2023 WL 2638314
    (C.D. Cal. Feb. 3, 2023) ...............................................................................14

**STATUTES**

47 U.S.C. § 230............................................................................... *passim*

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................................16

Fed. R. Civ. P. 12(b) ...................................................................................6

Fed. R. of Evid. 201.....................................................................................5

1

2
**MISCELLANEOUS**

3   Restatement (Second) of Torts § 402A (1965)........................................................15

4   Restatement (Third) of Torts § 19(a) (1998)........................................................14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

YouTube does not condone harassment and cyberbullying.  It has put in place Community Guidelines under which it reserves the right, in its discretion, to remove such content from its online service and ban users who post it.  *Cf.* Fourth Amended Complaint (4AC) ¶ 16 (ECF 42).  But as the Supreme Court recognized not long ago, "for *every minute* of the day, approximately 500 hours of video are uploaded to YouTube." *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1216 (2023).  There is no way for YouTube to review and make judgments about that massive volume of video content (or the universe of other user interactions that occur on the site).  YouTube thus relies on machine learning and human reports to help moderate the site and enforce the Community Guidelines it has voluntarily adopted.  *Cf.* 4AC ¶ 32.

Plaintiff alleges that he is a victim of "Cyberstalking" and "Cyberharassment" by individuals posting and commenting on YouTube.  4AC ¶¶ 10—11.  He claims that he has reported this content, that YouTube, via Twitter, said it "strictly enforce[s]" its anti-harassment policy, and that YouTube has not removed all the content Plaintiff has said he views as problematic.  4AC ¶¶ 11, 16, 32—34.  According to Plaintiff, when YouTube reserved the right to take down harassment, it obligated itself to take down everything that Plaintiff subjectively believes meets that standard, and that YouTube should face liability if anything remains.  Plaintiff is mistaken.

For starters, Section 230 of the Communications Decency Act bars all of Plaintiff's claims against YouTube.  Congress enacted that section "to protect websites against the evil of liability for failure to remove offensive content." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc).  Here, Plaintiff alleges exactly that:  a failure to remove content.  Section 230 "shields from liability all publication decisions, whether to edit, to remove, or

1   to post, with respect to content generated entirely by third parties." *Barnes v.*
2   *Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009).  It also bars claims for
3   "negligent provision of services"—such as Plaintiff insists he alleges here—that a
4   website "undertook to provide." *Ibid.*

5           In enacting Section 230, one of Congress's core policy goals was to "remove
6   the disincentives to selfregulation" that would arise if policies such as YouTube's
7   Community Guidelines triggered liability.  *Zeran v. Am. Online, Inc.*, 129 F.3d
8   327, 331 (4th Cir. 1997).  "[H]olding [YouTube] liable for establishing standards
9   and guidelines would ultimately create a powerful disincentive for service
10  providers to establish any standards or ever decide to remove objectionable
11  content, which the CDA was enacted to prevent."  *Bennett v. Google, Inc.*, No.
12  1:16-cv-02283 (TFH), 2017 WL 2692607, at *2-3 (D.D.C. June 21, 2017).
13  Plaintiff's claims against YouTube—premised on the notion that YouTube's
14  policies trigger liability—thus fall in the heartland of Section 230 immunity, no
15  matter how generously Plaintiff's claims are construed.

16          Plaintiff is well-aware that Section 230 bars his claims (*see, e.g.*, 4AC ¶¶ 3,
17  16, 34, 43) but tries to avoid dismissal through alternative claims by alleging that
18  YouTube should be liable for its own "fraud" or "failure to warn."  This gambit of
19  restyling claims has been rejected time and again.  *See, e.g.*, *Barnes v. Yahoo!, Inc.*
20  570 F.3d 1096, 1101–1102 (9th Cir. 2009) (collecting cases).  "[W]hat matters is
21  not the name of the cause of action" but "whether the cause of action inherently
22  requires the court to treat the defendant as the 'publisher or speaker' of content
23  provided by another."  *Ibid.*  Thus, parties may not "circumvent the CDA's
24  protection through 'creative' pleading" or "artful skirting of the CDA's safe harbor
25  provision."  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016).  Instead,
26  "any activity that can be boiled down to deciding whether to exclude material that
27  third parties seek to post online is perforce immune under section 230."
28  *Roommates.com, LLC*, 521 F.3d at 1170-71.

1    No matter how presented, Plaintiff's case boils down to the fact that content
2    he finds objectionable was posted on, or sent through, YouTube by other
3    individuals.  But where a plaintiff "takes issue with [a] post, his legal remedy is
4    against [the author] himself as the content provider, not against Google [or
5    YouTube] as the publisher."  *Bennett v. Google, LLC*, 882 F.3d 1163, 1168 (D.C.
6    Cir. 2018).  In light of Section 230, Plaintiff's claims should be dismissed with
7    prejudice.  *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th
8    Cir. 2019), *cert. denied* 140 S. Ct. 2761 (2020) (affirming motion to dismiss); *cf.*
9    *also Gonzalez v. Google LLC*, 2 F.4th 871, 890 & n.8 (9th Cir. 2021), *vacated on*
10   *other grounds*, 143 S. Ct. 1191 (2023).

11   In addition to the immunity Section 230 provides here, Plaintiff has not
12   come close to stating a viable claim against YouTube.  As set out below, that
13   provides an independent reason to dismiss.

14   ## II.    FACTUAL AND PROCEDURAL BACKGROUND

15   YouTube is an online service provided by Google.[1]  YouTube allows users
16   to upload, view, share, and comment on a wide variety of user-generated videos
17   and other audio-visual content through its website located at www.youtube.com
18   and associated mobile applications.  *See, e.g.*, *Lenz v. Universal Music Corp.*, 572
19   F. Supp. 2d 1150, 1152 (N.D. Cal. 2008) (describing YouTube as a "popular
20   Internet video hosting site" that provides "video sharing" and "user generated
21   content").  YouTube is effectively the world's largest video library, where "users
22   collectively watch more than 1 billion hours of video *every day*."  *Taamneh*, 143 S.
23   Ct. at 1216.

24   On May 5, 2023, Plaintiff filed a complaint and application for a temporary
25   restraining order against Michael Christopher Thompson—identified as an
26

27   [1] YouTube LLC is a wholly-owned subsidiary of Google LLC.  The YouTube
28   website is operated by Google LLC under the Terms of Service discussed herein.
     For ease of reference and the purposes of this motion, both Google LLC and
     YouTube LLC are referred to as "YouTube."

individual from Houston, Texas—relating to alleged harassment and intentional
infliction of emotional distress.  ECF 1, 4.  The gravamen of Plaintiff's complaint
is alleged harm flowing from Mr. Thompson's postings on YouTube.  *See, e.g.*,
Compl. at 7 (ECF 4).  The Court denied the motion, including for failure to state a
claim and constitutional concerns with the Plaintiff's requested relief.  ECF 7 at 2.
Plaintiff then amended his complaint multiple times, modifying allegations and
adding defendants (including an individual identified as "Gregory R. Holmes of
Kentucky" and YouTube LLC).  *See* ECF 12 (First Am. Compl.); ECF 14 (Second
Am. Compl.); ECF 15 (Mot. Leave to File Third Am. Compl.); ECF 21 (Order
Granting Leave to File 3AC); and ECF 27 (3AC).

Before serving defendants, Plaintiff filed a further motion for leave to file a
Fourth Amended Complaint.  ECF 29.  The Court granted that motion and ordered
Plaintiff to serve the Fourth Amended Complaint within seven days of serving the
Third Amended Complaint on all defendants.  ECF 32.  Plaintiff filed the Fourth
Amended Complaint on July 17, 2023 (ECF 42), before YouTube's response to the
Third Amended Complaint was due (*cf.* ECF 33).  YouTube agreed to accept e-
mail service of the 4AC, which occurred on July 18, 2023.  Declaration of Conor
Tucker ISO YouTube LLC's Motion to Dismiss (Tucker Decl.) ¶ 3—4.

The 4AC is not organized into claims, but is instead written as collected
allegations and requests for relief.  Plaintiff alleges that the Individual Defendants
(Thompson and Holmes) "[c]yberstalk[ed]" and "harass[ed]" Plaintiff.  *See, e.g.*,
4AC ¶¶ 9-10.  They allegedly did so by "post[ing]" or "publis[ing]" videos on
YouTube and "comment[ing]" on Plaintiff's YouTube channel.  *See, e.g.*, 4AC
¶¶ 13, 18, 21. (Plaintiff's complaint also discusses other acts of alleged stalking
and harassment that have nothing to do with YouTube, including on other
platforms such as Twitter.  *See, e.g.*, 4AC ¶ 24.)  The Individual Defendants also
allegedly "defamed and slandered" Plaintiff.  *See, e.g.*, 4AC ¶¶ 27—29, 35.

1    Instead of proceeding just against these individuals, Plaintiff sought to vent

2    his anger at YouTube as well.  And at the core of Plaintiff's allegations against

3    YouTube are YouTube's content moderation policies and Terms of Service.

4    YouTube maintains terms of service that apply to "users who provide Content" to

5    YouTube.[2]  Those Terms of Service indicate that YouTube—"in [its] discretion"—

6    "may remove or take down" content that breaches the Terms of Service or "may

7    cause harm to … our users."  *See, e.g.*, Tucker Decl. (Ex. B) at 31.  YouTube's

8    Community Guidelines indicate that it utilizes "a combination of people and

9    machine learning to detect problematic content" and remove it "even before it's

10   viewed."  Tucker Decl. (Ex. E) at 58.  It also allows the YouTube community to

11   "play[] an important role in flagging content they think is inappropriate."  *Id.*at 59.

12

13   _____

14   [2] YOUTUBE, "Terms of Service," https://www.youtube.com/t/terms (effective
     January 5, 2022) (Tucker Decl. Ex. A).  YouTube keeps publicly-available archival
15   versions of its terms of service.  *See* https://www.youtube.com/t/terms?
     archive=20210317 (effective Mar. 17, 2021 – January 4, 2022) (Tucker Decl. Ex.
16   B); https://www.youtube.com/t/terms?archive=20200118 (effective Nov. 18, 2020
     – Mar. 16, 2021) (Tucker Decl. Ex. C).  Unless otherwise specified, the "Terms of
17   Service" are identical in the cited or quoted respects.  YouTube's Community
     Guidelines can, likewise, be found online:  https://www.youtube.com/
18   howyoutubeworks/policies/community-guidelines/  (Tucker Decl. Exs. D
     (Harassment & cyberbullying policies), E (Detecting Violations).
19   The Court may take judicial notice of these documents.  *First*, on a motion
     to dismiss, the Court may "consider unattached evidence on which the complaint
20   necessarily relies" if the complaint refers to a document that is central to the
     plaintiff's claim and there are no questions regarding its authenticity. *United States*
21   *ex. rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (internal
     quotations omitted); *Stark v. Patreon, Inc.*, No. 22-cv-03131-JCS, 2022 WL
22   7652166, at *5 (N.D. Cal. Oct. 13, 2022) (granting judicial notice of terms of
     service "because Plaintiffs' complaint incorporates those documents by
23   reference").  Plaintiff's complaint references the Terms of Service (4AC ¶¶ 2, 16,
     41) including the contents of its Community Guidelines (*see, e.g.*, 4AC ¶ 41) and
24   his allegations of fraud and negligence arise from YouTube's alleged failure to
     remove material in accordance with these provisions (*see, e.g.*, ¶¶ 10, 32-34, 41).
25   *Second*, under Federal Rule of Evidence 201, a court may take judicial notice of
     "an adjudicated fact if it is 'not subject to reasonable dispute'" (*Khoja v. Orexigen*
26   *Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied*, *Hagan v.*
     *Khoja*, 139 S. Ct. 2615 (2019)), including the content of publicly-accessible
27   websites (*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010))
     and publicly-available documents that show what information is "in the public
28   realm" (*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954,
     960 (9th Cir. 2010)).  The documents are publicly-available on websites accessible
     in the public realm.

Plaintiff alleges that YouTube's failure to remove posts by, or failure to ban, the Individual Defendants subjects it to liability here. The 4AC alleges that the content was not removed "as a result of Youtube's negligence, failure to warn, and untenable functionality." 4AC ¶ 2; *see also* 4AC ¶ 34. Plaintiff alleges that YouTube "committed fraud" by failing to "strictly enforce" its "Cyberharassment policies" under its "own Terms of Service." 4AC ¶ 16. He alleges that he "reported Thompson's channel several times" but that YouTube failed to remove them and therefore YouTube's use of "AI or Bots" and "Content Management Systems" somehow result in "negligence or fraud." 4AC ¶ 32. And he argues that YouTube is liable for Thompson's content "through reckless negligence in moderating their site and enforcing their Terms of Service." 4AC ¶ 41.

Plaintiff demands that YouTube (1) perform its content review and content moderation as he sees fit (4AC ¶ 43); (2) pay $120 million in punitive damages for not removing content he believes is harmful "in spite of their professed commitment to taking such situations seriously" (4AC ¶ 44); (3) pay $10 million in compensatory damages for failure to "provide a safe service" (4AC ¶ 45); (4) reserve $25-$100 million for "an initiative to provide aspiring writers with free workshops to be conducted by experienced writers somewhere on their platform" (4AC ¶ 46); and (5) provide him with "lifetime health insurance coverage of the best quality" and pay for "psychiatric and psychology" bills (*ibid.*).[3]

## III.   LEGAL STANDARD

Under Rule 12(b)(6), claims may be dismissed on a dispositive legal issue (*Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015)) or for failure to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted)). These standards apply with equal force to Rule 12(b)(1)

---

[3] On July 14, 2023, undersigned counsel conferred with Mr. Schultz regarding this motion to dismiss. Tucker Decl. ¶ 3. At that meeting and in follow-on correspondence, the parties could not reach agreement. *Ibid.* This motion followed.

1  motions raising issues of immunity on the face of a complaint.  *See Terenkian v.*

2  *Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

3      "When a plaintiff cannot allege enough facts to overcome Section 230

4  immunity, a plaintiff's claims should be dismissed." *Dyroff*, 934 F.3d at 1097.

5  Courts apply Section 230 as early as possible to effectuate Congress' purpose of

6  immunizing websites like YouTube from protracted litigation.  *Id.* at 1101.

7  Although the Court assumes the truth of well-pleaded allegations for the purposes

8  of a motion to dismiss, speculation and "surmise" is not credited.  *Levitt v. Yelp!*

9  *Inc.*, 765 F.3d 1123, 1135-36 (9th Cir. 2014).

10  **IV.   ARGUMENT**

11      **A.    Section 230 bars Plaintiff's claims.**

12          **1.    Section 230 immunizes "any activity that can be boiled**

13              **down to deciding whether to exclude material that third**

14              **parties seek to post."**

15      Under Section 230, "[n]o provider or user of an interactive computer service

16  shall be treated as the publisher or speaker of any information provided by another

17  information content provider." 47 U.S.C. § 230(c)(1).[4]  The immunity is complete,

18  as "[n]o cause of action may be brought and no liability may be imposed under any

19  State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).[5]

20  _____

21  [4]  Often framed as a three-step analysis, section 230 immunizes "(1) a provider or
   user of an interactive computer service (2) whom a plaintiff seeks to treat, under a

22  state law cause of action, as a publisher or speaker (3) of information provided by
   another information content provider." *Barnes,* 570 F. 3d at 1100—1101.

23  YouTube easily satisfies the first step.  *See, e.g., Gonzalez v. Google LLC,* 2 F.4th
   871, 891(9th Cir. 2021), *vacated on other grounds*, 143 S. Ct. 1191 (2023)

24  (YouTube is an interactive computer service); *accord, e.g., Ripple Labs, Inc. v.
   YouTube LLC*, No. 20-cv-02747-LB, 2020 WL 6822891, at *6 (N.D. Cal. Nov. 20,

25  2020).
       The second and third steps together ask whether this suit seeks to impose

26  liability on YouTube for the exercise or non-exercise of traditional publisher
   powers such as hosting or removing others' content.  These steps are analyzed

27  together throughout Section IV.A.
   [5]  Although not directly at issue here, Section 230(c)(2) provides interactive

28  computer services immunity from suit by those whose content has been *removed*
   when a platform decides to remove or restrict access to such objectionable
   material.  47 U.S.C. § 230(c)(2).

1   Congress enacted Section 230 "to promote the free exchange of information and

2   ideas over the Internet." *Barnes*, 570 F.3d at 1099–1100 (citation omitted). The

3   statute's findings "applaud[] the Internet as a 'forum for a true diversity of political

4   discourse' that offers 'myriad avenues for intellectual activity' and provides 'a

5   variety of political, educational, cultural, and entertainment services.'" *Barrett v.*

6   *Rosenthal*, 40 Cal. 4th 33, 56 (2006).

7        At the same time, Congress designed Section 230 to "encourage service

8   providers to selfregulate the dissemination of offensive material over their

9   services." *Zeran*, 129 F.3d at 331. But the "disincentives to selfregulation" would

10  be high if "services risked subjecting themselves to liability" by taking on "the role

11  of a publisher" through "regulat[ing] the dissemination of offensive material."

12  *Ibid.* So Section 230 "forbids the imposition of publisher liability on a service

13  provider for the exercise of its editorial and self-regulatory functions." *Ibid.*

14  Instead, "if [plaintiff] takes issue with [a] post," he must pursue the content

15  provider (*i.e.*, the Individual Defendants), not the publisher (*i.e.*, YouTube).

16  *Bennett*, 882 F.3d at 1168.

17       Under Section 230, the Internet "ha[s] flourished" with the development of

18  new online services and technologies. *Kimzey*, 836 F.3d at 1266. The Ninth

19  Circuit has warned against permitting new theories of "liability that would upset,

20  rather than 'preserve' the vibrant culture of innovation on the internet that

21  Congress envisioned" in enacting Section 230. *Enigma Software Grp. USA, LLC*

22  *v. Malwarebytes*, *Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019).

23       Websites like YouTube are "shield[ed] from liability [for] *all* publication

24  decisions, whether to edit, to remove, or to post" with respect to third-party

25  content. *Barnes*, 570 F.3d at 1105 (emphasis added). Section 230 provides a

26  "broad federal immunity to any cause of action that would make service providers

27  liable for information originating with a third-party user." *Perfect 10, Inc. v.*

28  *CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (cleaned up); *Asia Econ. Inst. v.*

1   *Xcentric Ventures LLC*, No. CV 10-01360 SVW (PJWx), 2011 WL 2469822, at *7

2   (C.D. Cal. May 4, 2011) (Section 230 has "broad reach" that "bar[s] a panoply of

3   torts").

4              **2.    Plaintiff's claims are barred by Section 230 because they all**

5                      **relate to YouTube's alleged "deci[sion] whether to exclude**

6                      **material that third parties seek to post."**

7         In applying Section 230 immunity, "what matters is not the name of the

8   cause of action," but "whether the cause of action inherently requires the court to

9   treat the defendant as the 'publisher or speaker' of content provided by another."

10  *Barnes*, 570 F.3d at 1101–02.  Section 230 "is implicated not only by claims that

11  explicitly point to" content created by others, "but also by claims which, though

12  artfully pleaded to avoid direct reference, implicitly require recourse to that content

13  to establish liability or implicate a defendant's role, broadly defined, in publishing"

14  that content. *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017),

15  *aff'd*, 934 F.3d 53 (2d Cir. 2019). No amount of "creative pleading" allows

16  plaintiffs to "advance the same basic argument that the statute plainly bars."

17  *Kimzey*, 836 F.3d at 1265-66.

18        Section 230 thus bars claims of alleged failure to follow content moderation

19  policies or implement safety measures.  *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th

20  12, 31 (2021) (applying Section 230 to allegations of fraudulent business practices

21  of failing to remove accounts in violation of terms of service); *Doe v. MySpace*

22  *Inc.*, 528 F.3d 413, 419-20 (5th Cir. 2008) (rejecting claims of fraud relating to

23  alleged "failure to implement basic safety measures to protect minors").  It bars

24  any claim where the harm flows from the publication of—or "fail[ure] . . . to

25  remove"—others' content.  *See Barnes*, 570 F.3d at 1103.  And it bars allegations

26  sounding in negligence or "product liability," as "every published decision" has

27  rejected efforts to evade Section 230 by recasting claims based on user content as a

28  service's failure to "warn" or "protect" users "of the dangers posed by" the

1    services.  *In re Facebook, Inc.*, 625 S.W.3d 80, 93-95 (Tex. 2021), *cert. denied*,
2    142 S. Ct. 1087 (2022).

3         The 4AC is not organized in claims—but each of Plaintiff's alleged injuries
4    flow from content purportedly posted by the two Individual Defendants.  For
5    instance, Plaintiff seeks to recover millions for alleged economic damages of a few
6    thousand dollars to a purported business.  *See, e.g.*, 4AC ¶ 46.  But that harm
7    allegedly resulted from Individual Defendants' "harassment" through "Youtube's
8    Livechat function" (4AC ¶ 30) and various other "defamatory statements" from the
9    Individual Defendants (4AC ¶ 35).  He alleges mental anguish from purported
10   harassment and cyberbullying—and points to the *content* that YouTube allegedly
11   failed to remove.  *E.g.*, 4AC ¶ 32, 42.  And he alleges YouTube defrauded him into
12   using its services because it did not remove *content* which he flagged as
13   objectionable.  4AC ¶¶ 16, 32—34.

14        Section 230 squarely bars such claims relating to YouTube's failure to
15   remove content, Plaintiff's viewing of allegedly harmful content, and any allegedly
16   harmful communication between users.  *See Barnes*, 570 F.3d at 1103
17   ("[R]emoving content is something publishers do, and to impose liability on the
18   basis of such conduct necessarily involves treating the liable party as a publisher of
19   the content it failed to remove."); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190,
20   202 (2017) (Section 230 blocks claims where "the source of [plaintiff's] alleged
21   injuries, the basis for his claim, is the content of the [third-party] pages and
22   Facebook's decision not to remove them"); *Kimzey*, 836 F.3d at 1266 (Section 230
23   bars liability stemming from communications between users); *Doe*, 528 F.3d at
24   420-22 (same).  If Plaintiff is entitled to a remedy on those alleged harms at all, it
25   is against the people who posted that content—not YouTube as the publisher.  *See*
26   *Bennett*, 882 F.3d at 1168.  Section 230 bars this suit.

27
28

**3.**    **Courts have already found that Section 230 bars Plaintiff's theories of products liability and fraud.**

During the meet and confer process, Plaintiff indicated that he views his claims against YouTube as "products liability" and "fraud." Tucker Decl. ¶ 3. Even liberally construing the 4AC to include such claims, Section 230 bars them.

Starting with "products liability," "every published decision" has rejected efforts to evade Section 230 by recasting claims based on user content as a service's failure to "warn" or "protect" users "from the dangers posed by" the services. *In re Facebook*, 625 S.W.3d at 93-95; *see also Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 573 (2009) (Section 230 barred product liability claim); *Bride v. Snap Inc.*, No. 2:21CV-06680-FWS (MRW), 2023 WL 2016927, at *6 (C.D. Cal. Jan. 10, 2023) (rejecting product liability claim based on allegations that the defendants "fail[ed] to adequately regulate end-user's abusive messaging"). This is true even if the claim sounds in "negligence:" "[A] plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory . . . to negligence." *Barnes*, 570 F.3d at 1102. Any duty that YouTube allegedly violated "derives from [YouTube's] conduct as a publisher" (*id.* at 1103) and thus its actions "boil[] down to deciding whether to exclude material that third parties seek to post online" (*Roommates.com*, 521 F.3d at 1170-71). Indeed, Section 230 applies doubly here—because Plaintiff alleges harm from *content* and attempts to hold YouTube liable for its *publication*. The "unanimous view" is that Section 230 bars "claims alleging that defectively designed internet products allowed for transmission of harmful third-party communications." *In re Facebook*, 625 S.W.3d at 94.

Plaintiff's allegation that YouTube employed "AI," "bots," or "algorithms" for some or all of its content moderation changes nothing. 4AC ¶ 32. The use of "algorithms" to "analyze user posts" and "recommend" third party content is "publish[ing]" for the purposes of Section 230. *Dyroff*, 934 F.3d at 1098. The use

of algorithms to analyze user posts to decide what to remove is too. YouTube's *method* of implementing its self-regulation and publication decisions—whether by algorithm or human hand—is irrelevant: the decision whether or not "to remove" content remains a core "publication decision[]" subject to Section 230 immunity. *Barnes*, 570 F.3d at 1105.[6] Indeed, the statute contemplates this result—it *assumes* that "software" or "enabling tools" may be used to "filter, *screen*, allow, or *disallow* content." 47 U.S.C. § 230(f)(4)(A) (emphasis added). And such software would be entitled to immunity as an "interactive computer service" appropriately entitled to immunity. *Id.* §§ 230(c)(1); (f)(2).

Plaintiff's "fraud" claim fares no better against Section 230. Plaintiff alleges that YouTube's failure to live up to its own Terms of Service or Community Guidelines constitutes fraud. 4AC ¶¶ 16; 32—34. The California Court of Appeals recently explained that a plaintiff cannot repackage YouTube's "failure to remove *third party content*" into liability based on alleged "promises and representations" derived from "general statements in its monitoring policy." *Murphy*, 60 Cal. App. 5th at 31—32. Because the "gravamen of Murphy's complaint seeks to hold Twitter liable, not for specific factual representations it made, but for enforcing its Hateful Conduct Policy ... and exercising its editorial discretion," the claim ran counter to Section 230. *Id.* at 30-32. The same is true here. Both the alleged "fraud" (failure to remove when flagged) and the alleged harm flowing therefrom (the publication of allegedly harmful videos) derive from

---

[6] Overwhelming precedent establishes that platforms' use of algorithms in publishing third-party content—even algorithms that recommend dangerous, illegal, or unlawful conduct—is immunized by Section 230. *Dyroff* 934 F.3d at 1098; *Force v. Facebook, Inc.*, 934 F.3d 53, 66—67 (2d Cir. 2019) (service is a "publisher" of user-generated content when "it uses tools such as algorithms that are designed to match that information with a consumer's interests"); *see also L.W. v. Snap, Inc.*, No. 22CV619-LAB-MDD, 2023 WL 3830365, at *5 (C.D. Cal. June 5, 2023) (using algorithms "does not forfeit . . . entitlement to Section 230 immunity"); *Anderson v. TikTok, Inc.*, No. 22-1849, 2022 WL 14742788, at *3 (E.D. Pa. Oct. 25, 2022) (Section 230 barred product design claims alleging TikTok's "algorithm 'recommend[s] inappropriate, dangerous, and deadly videos to users'" (emphases omitted)).

YouTube's publishing of—or refusal to remove—others' content.  Under Section 230, its enforcement of its Terms of Service and Community Guidelines to remove content (or not) is "quintessential publisher conduct" that cannot be the basis for liability.  *Barnes*, 570 F.3d at 1107; *see also Bennett,* 882 F.3d at 1167–1168; *Zeran*, 129 F.3d at 331.

However styled, Plaintiff's claims seek to hold YouTube liable for alleged harm flowing from content others posted to the site, and YouTube's supposed failure to remove that third party content.  Such claims are categorically barred under Section 230.  Because the nature of the claims is clear, and no such claim can proceed, Plaintiff's case should be dismissed without leave to amend.  YouTube's Section 230 "immunity means further amendment would be futile." *Metroka v. Pa. State L. Enf't*, No. CV 23-601, 2023 WL 3767745, at *2 (E.D. Pa. June 1, 2023); *see also Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (affirming district court's dismissal with prejudice because granting plaintiff "leave to amend its complaint would have been futile" where plaintiff's claim was "barred by the CDA" under Section 230); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1067 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (dismissing claims against Facebook without leave to amend on the basis that they were barred under Section 230(c) as a matter of law); *Bride*, 2023 WL 2016927, at *8 (where "core theory" barred by Section 230, amendment is "futile"); *Wells v. YouTube, LLC*, No. 3:20-CV-2849-S-BH, 2021 WL 2652966, at *5 n.6, 6 (N.D. Tex. May 17, 2021), *report and recommendation adopted sub nom.*, 2021 WL 2652514 (N.D. Tex. June 28, 2021) (rejecting leave for pro se plaintiff to amend where "all of Plaintiff's claims in this suit are barred by immunity under § 230(c)" and therefore "no further opportunity to amend her claims against Defendant is warranted").

**B.** **Plaintiff's allegations against YouTube separately fail to state a claim.**

While Section 230 ends this matter, as pled, Plaintiff does not even state a viable cause of action against YouTube for product liability or fraud.

**1.** **Plaintiff fails to state a claim for products liability.**

The 4AC fails to state a product liability claim against YouTube under California law because California does not extend its product liability law to services, like YouTube. *Merritt v. Countrywide Fin. Corp.*, No. 09-cv-01179-BLF, 2015 WL 5542992, at *22 (N.D. Cal. Sept. 17, 2015) ("California courts continue to require a . . . physical good" before applying product liability law) (citing *Cronin v. J.B.E. Olson Corp.*, 8 Cal.3d 121, 130 (1972)), *aff'd*, 783 F. App'x 717 (9th Cir. 2018); *Ziencik v. Snap, Inc.*,  No. CV 21-7292-DMG (PDx), 2023 WL 2638314, at *1, *4 (C.D. Cal. Feb. 3, 2023) ("Snapchat is more like a service than a product, and services are not subject to the laws of strict products liability.")

"[W]hether something is properly considered a 'product' is a gatekeeping function that controls the availability of a products liability cause of action" under California law. *Sharufa v. Festival Fun Parks, LLC*, 49 Cal. App. 5th 493, 502 (2020).  This is true whether considered under strict liability or negligence. *See Milwaukee Elec. Tool Corp. v. Super. Ct.*, 15 Cal. App. 4th 547, 557 (1993).  And California law defines a "product" as "a physical article which results from a manufacturing process and is ultimately delivered to a consumer." *Pierson v. Sharp Mem'l Hosp.*, 216 Cal. App. 3d 340, 345 (1989).  The Second and Third Restatements reach the same result. *See* Restatement (Third) of Torts § 19(a) (1998) ("Restatement (Third)") (defines a "product" as "tangible personal property distributed commercially for use or consumption"); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991) (identifying as "products" only "tangible items, such as tires, automobiles, and insecticides") (citing Restatement (Second)

1  of Torts § 402A (1965)).[7]

2      "Courts are unanimous in refusing to categorize commercially-provided

3  services as products."  Restatement (Third) § 19 cmt. f.  And as noted, California

4  law requires dismissal where a defendant "provid[ed] services" and not "products."

5  *See, e.g.*, *San Diego Hosp. Ass'n. v. Super. Ct.*, 30 Cal. App. 4th 8, 15 (1994); *see*

6  *also Jackson v. Airbnb, Inc.*, No. CV 22-3084 DSF (JCx), 2022 WL 16752071, at

7  *9 (C.D. Cal. Nov. 4, 2022) (an online "platform that connects users . . . is more

8  akin to a service than to a product"); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal.

9  App. 5th 410, 419 (2022) (noting lower court conclusion that "Uber app was not a

10  product, and thus a products liability theory of recovery was not legally viable").

11      Those cases control here.  Plaintiff challenges how YouTube's service flags,

12  assesses, and moderates the content published on its platform as well as the ability

13  of people to communicate across it.  This is more akin to a publishing service or

14  business service connecting people to one another.  These are not "products"

15  subject to product liability laws.  *See, e.g.*, *Quinteros v. InnoGames*, No. C19-

16  1402RSM, 2022 WL 898560, at *1, *7 (W.D. Wash. Mar. 28, 2022) (app that

17  enabled "interaction between online players . . . over chat and other message

18  systems" offered a service, "not a product"); *Crouch v. Ruby Corp.*, No. 22-cv-

19  711-MMA (JLB), 2022 WL 16747282, at *9 (S.D. Cal. Nov. 7, 2022) (online

20  matchmaking company "do[es] not sell products on their website, they sell a

21  service").

22      Plaintiff's assertion that YouTube provides a "product" is insufficient to

23  avoid dismissal.  Courts disregard legal conclusions in a complaint.  *Iqbal*,

24  556 U.S. at 678.  Plaintiff does not—and cannot—allege that he was harmed by a

25  *physical* product.  He therefore cannot state a product liability claim.

---

[7]  Both the Second and Third Restatement of Torts are "entitled to great consideration" in California on product liability law.  *Brady v. Calsol, Inc.*, 241 Cal. App. 4th 1212, 1225 (2015) (citation omitted).

1

### 2.   Plaintiff fails to state a claim for fraud.

2   The 4AC does not state a claim for fraud either.  To begin, fraud must be

3   pleaded with particularity (Fed. R. Civ. P. 9(b)), and Plaintiff has not done so.  He

4   refers to a single statement purportedly attributed to YouTube—that YouTube

5   stated on their "Twitter account that they 'strictly enforce' their Cyberharassment

6   policies"—but does not provide supporting allegations sufficient to specifically

7   identify the statement.  4AC ¶¶ 11, 16.  The 4AC's vague references to the Terms

8   of Service and the Community Guidelines clarify nothing.  And the 4AC is devoid

9   of allegations that Plaintiff relied on these statements or was harmed by that

10   reliance.  That is not particular enough to state a claim for fraud.  *Cf. Schaffer*

11   *Family Inv'rs LLC v. Sonnier*, 120 F.Supp.3d 1028, 1044 n.6 (C.D. Cal. 2015)

12   (dismissing under Rule 9(b) for failure to plead reliance on specific statements).

13   Even if pleaded more particularly, a fraud claim based on YouTube's

14   alleged statement on Twitter or its Terms of Service and Community Guidelines

15   would fail because YouTube's alleged statements are not of the sort that can

16   support a claim for justifiable reliance that cyberharrassment or bullying will

17   always be removed from YouTube.  *See Serv. by Medallion, Inc. v. Clorox Co.*, 44

18   Cal.App.4th 1807, 1816 (1996) ("justifiable reliance by the plaintiff" a necessary

19   element of fraud under California law).  That YouTube intends to "strictly enforce"

20   its harassment policies is exactly the type of "[l]ofty but vague statement[]" that

21   has been held to be non-actionable.  *See, e.g.*, *Prager Univ. v. Google LLC*, 951

22   F.3d 991, 1000 (9th Cir. 2020).  It is an ideal to which YouTube aspires—but it is

23   not "fraud" if YouTube does not perfectly enforce its voluntarily-adopted policies.

24   And Plaintiff points to no statement by YouTube that addresses the specific

25   content about which he complains or any promise to remove any and every video

26   that he reports.

27   It is well-established under California law that statements in the "Terms of

28   Service 'place restrictions on users' behavior,' they 'do not create affirmative

obligations'" for YouTube.  *See, e.g.*, *Cross*, 14 Cal.App.5th at 201 (citations omitted).  YouTube's "community standards are no more helpful to [Plaintiff]. The standards provide further guidance to users about what kind of content they can share on [YouTube], and the types of discretionary actions [YouTube] may take with regard to content posted by others." *Id.* at 204.

The Terms of Service and Community Guidelines make that clear here. YouTube was not *undertaking a duty* to remove all violative third-party content— it simply *reserved the right* to do so.  *See, e.g.*, Tucker Decl. (Ex. A) at 18 (giving YouTube the option to "remove or take down" content "in [its] discretion").  And the Community Guidelines explain YouTube's discretionary enforcement policies. They do not make specific statements that YouTube will remove content that any user believes, in their view, violates them.  Indeed, YouTube disclaims responsibility for content.  The Terms of Service clearly state that all "[c]ontent is the responsibility of the person or entity that provides it to the Service." *See e.g.*, Tucker Decl. (Ex. A) at 12.  And YouTube provides "the service … 'as is' and YouTube does not make any specific commitments or warranties about the service. For example, we don't make any warranties about: (A) The content provided through the service; (B) The specific features of the service … or its ability to meet your needs." (*Id.* at 12-13)

YouTube's Terms of Service and Community Guidelines thus do not support and indeed preclude a claim of justifiable reliance on the notion that all violative third-party content would be removed.  Accordingly, Plaintiff cannot state a claim by alleging that YouTube somehow committed fraud by not removing content that he flagged.

## V.   CONCLUSION

For the foregoing reasons, the Fourth Amended Complaint should be dismissed as to YouTube without leave to amend.

1

Respectfully submitted,

2

3    Dated: July 31, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

4

5                                        By: ___/s/ *Conor Tucker*_____
                                              Conor Tucker

6

7

8                                        *Attorney for Defendant*
                                         YOUTUBE LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROOF OF SERVICE**

The undersigned certifies that on July 31, 2023, the below-listed documents were electronically filed via the court's CM/ECF system, which will serve counsel of record for all parties and Plaintiff proceeding *pro se*.

**DEFENDANT YOUTUBE LLC'S NOTICE OF MOTION AND**

**MOTION TO DISMISS**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**DECLARATION OF CONOR TUCKER AND EXHIBITS THERETO**

In addition, the above-listed documents were transmitted via email and first-class U.S. mail as indicated below:

Todd Michael Schultz
818 N. Doheny Dr., #1108
West Hollywood, CA 90069
   Toddschultz86@gmail.com

Dated: July 31, 2023                    */s/ Conor Tucker*

_____
                                         Conor Tucker